IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| WB MUSIC CORP., et al.,<br><br>          Plaintiffs,<br><br>vs.<br><br>ONCE AND FOR ALL, INC., TODD A. MCKINLEY and VIRGINIA MCCARTIN,<br><br>          Defendants. | ORDER and MEMORANDUM OPINION<br><br><br><br><br><br>Case No. 2:06-CV-282 TC |

  Plaintiffs have sued Once and For All Inc. ("Once and For All"), Todd A. McKinley and Virginia McCartin, alleging that they infringed Plaintiff's copyrights by playing several songs at a night club. Plaintiffs seek damages and injunctive relief.

  Once and For All is the corporation that operated Club Vortex, a nightclub in Salt Lake City, Utah. Mr. McKinley held a "sweat equity" share of Once and For All and also worked as Club Vortex's bar manager. Ms. McCartin was an investor and officer of Once and For All and also performed accounting services relating to Club Vortex's operations.

  On the nights of May 5, 2006, and August 20-21, 2005, an investigator hired by the American Society of Composers, Authors, and Publishers ("ASCAP") visited Club Vortex. ASCAP's investigator reported that on those nights, disc jockeys ("DJs") in the club played four songs whose copyrights were held by ASCAP members. Since Once and For All did not have a license to perform the four copyrighted songs the investigator heard on those nights, Plaintiffs, the owners of the copyrights, brought this action.

While Once and For All initially defended itself in this action, it later dropped its attorneys and did not hire new ones. Accordingly, a default judgment has been awarded against Once and For All in this case. (Plaintiffs' request to set the amount of damages will be addressed in a separate order.)

Now before the court are cross motions by Mr. McKinley and Ms. McCartin (collectively referred to herein as the "Defendants" unless otherwise noted) and Plaintiffs to grant summary judgment in their favor. At the heart of the dispute is whether Defendants meet the test for vicarious liability for copyright infringement. That test boils down to benefit from the infringing activities and control of those activities. Defendants argue that they did not have a direct financial interest in the infringing activities, nor did they have the right and ability to control those activities. Plaintiffs contend that the Defendants meet both of those criteria.

Both sides are half right. Mr. McKinley and Ms. McCartin had a financial interest in the copyright infringement sufficient to meet the test for vicarious liability. On the other hand, the record does not reflect that either of the Defendants had the right or ability to control the infringing activities. Because benefit and control must both be proven to show vicarious liability, summary judgment is GRANTED in favor of Mr. McKinley and Ms. McCartin and DENIED as to the Plaintiff's cross motion.

## BACKGROUND

The material facts in this case are either not disputed or not dispositive. Defendants do not contest that four copyrighted songs were performed at Club Vortex on the nights of May 6, 2005, and August 20-21, 2005. Nor do they assert that they or Once and For All had a license to

play those songs.[1]  Further, the Defendants admit to having financial interests in the operations of Club Vortex.  They also both acknowledge that they performed services for Once and For All, with Mr. McKinley supervising the Club Vortex's bar and Ms. McCartin providing bookkeeping services and serving as an officer for Once and For All.  The real dispute is over the legal significance of the Defendants' financial interest in and their practical involvement with Once and For All and Club Vortex.

Ms. McCartin was one of the original investors and founders of Once and For All.  Her initial investment in the corporation was $50,000, for which she received a 24% stake, apparently the largest share of any of shareholder.  She was also named as the only officer of Once and For All, though others were named as directors.  Ms. McCartin testified that her role as a corporate officer was minimal, since she "didn't have any entertaining business experience, so [she] wasn't called upon to be a leader . . ." (McCartin Dep. at 24, attached as Ex. 2 to Pls' Mem. in Opp'n.)  Ms. McCartin testified that Once and For All never paid any profit to its shareholders.

In addition to her roles as shareholder and officer, Ms. McCartin also provided accounting services to Once and For All.  Her duties included balancing the cash receipts from the club and managing payroll and payables.  Ms. McCartin was paid a salary by Once and For

---

[1] In their opening brief in support of summary judgment, Defendants asserted that the music for the nights in question was provided by a local radio station that had a license to play the copyrighted songs.  In support of this contention, Defendants cited to interrogatory answers they provided in this action.  But in their depositions, both Defendants acknowledged that they did not have personal knowledge as to whether the radio station played the music at the club those nights, and they had based their responses only on their reasonable belief.  While Plaintiffs argue that this discrepancy should be used to infer that the Defendants are dishonest, it appears more like a case of the Defendants not understanding the legal significance of stating a fact from personal knowledge.  Nor does it strike the court that the Defendants should be penalized for their counsel's choice to make the argument that the DJs had a license, especially given the Defendants' candor on the issue at their depositions.  In any event, in their reply brief, Defendants appear to have dropped their contention that whoever who played the music had a license to do so.

All for this work.  She testified that her salary varied over time, since she volunteered to take less pay when the club was not bringing in much money.  She eventually ended her involvement with Once and For All in around November 2005.

Ms. McCartin disclaimed any involvement in selecting the music for Club Vortex at any point in the club's existence.  (See, e.g., McCartin Dep. at 37 & 43.)  She testified that another director of Once and For All, Grant Mitchell, was entirely in charge of selecting music and hiring and managing DJs. (See id. at 41 & 43.)  Ms. McCartin said that she rarely visited Club Vortex.

Mr. McKinley was also involved in Once and For All from its inception.  Mr. McKinley did not invest any money in the corporation but was given a 12% "sweat equity" share for his efforts at the club.  He expected to share in any profit made by Once and For All but testified that such profit never materialized.

Mr. McKinley was also paid a salary to manage the bar at Club Vortex.  He described his duties as bar manager as including ordering supplies, setting up the bar, and supervising bar staff. Mr. McKinley testified that to his recollection, he was never the only manager at Club Vortex and was always accompanied by either Mr. Mitchell or one of Mr. Mitchell's assistants.  Mr. McKinley testified that although he worked at Club Vortex for about thirty to forty hours a week in 2004, he only worked there sporadically for most of 2005 because the club was not doing well financially in that year.

Mr. McKinley acknowledged that he had some control over the music played at Club Vortex.  Specifically, he said that he could control the music being played in the bar area. (See McKinley Dep. at 24-29, attached as Ex. 1 to Pls' Mem. in Opp'n.)  Significantly though, Mr. McKinley stated that he had no involvement with or supervision over the DJs at the club, who played music separate from the music Mr. McKinley could select and play. (See id. at 49-51.)

As mentioned, Plaintiffs have stated that the copyrighted songs involved in this action were performed by DJs. (See Decl. of Casanova at 2, attached as Ex. 2 to Pls' Mem. in Support of Cross Motion.) Like Ms. McCartin, Mr. McKinley testified that Mr. Mitchell had exclusive responsibility over entertainment at the club, including over the DJs. (See McKinley Dep. at 17 & 59.)

## ANALYSIS

### I. Summary Judgment Standard

"Summary judgment is proper if the evidence submitted by the parties, viewed in the light most favorable to the non-movant, indicates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Faustin v. City & County of Denver, Colo., 423 F.3d 1192, 1198 (10th Cir. 2005) (citations and internal quotation marks omitted). See also Fed R. Civ. P. 56(c). "A 'material fact' is one which could have an impact on the outcome of the lawsuit, while a 'genuine issue' of such a material fact exists if a rational jury could find in favor of the non-moving party based on the evidence presented." Chasteen v. UNISIA JECS Corp., 216 F.3d 1212, 1216 (10th Cir. 2000). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When the parties file cross motions for summary judgment, the court "is entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts." Atlantic Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1148 (10th Cir.2000) (quotation omitted). Courts must treat cross motions for summary judgment separately: denying one does not does

not require granting the other.  See Buell Cabinet v. Sudduth, 608 F.2d 431, 433 (10th Cir.1979).

## II. Vicarious Liability for Copyright Infringement

For purposes of deciding summary judgment, the parties do not dispute that the DJs' performance of the songs at Club Vortex on the nights in question infringed Plaintiffs' copyrights.  Plaintiffs submitted sufficient evidence in their cross motion to prove direct infringement, and it is undisputed that Once and For All did not have a license.  Once and For All, then, clearly faced liability for copyright infringement, whether direct, contributory or vicarious.  The only question is whether the Defendants can be held vicariously liable for Once and For All's infringement.

The parties did not cite, and the court did not locate, any Tenth Circuit authority establishing the standard for vicarious liable for copyright violation. But the clear consensus among the federal courts is that there are two necessary elements: a financial interest in the infringing activity and the right and ability to control such activity.  See, e.g., RCA/Ariola Int'l, Inc. v. Thomas & Grayston Co., 845 F.2d 773, 781 (8th Cir.1988) ("The prerequisites for vicarious liability for copyright infringements are: 1. The right and ability to supervise the infringing activity; and 2. An obvious and direct financial interest in exploitation of copyrighted materials.") and Feder v. Videotrip Corp., 697 F. Supp. 1165 1177 (D. Colo. 1998) (using same test.)

Courts have found that even an indirect financial benefit, such as a hope for future profits, is enough to meet the benefit prong.  See, e.g., A & M Records, Inc. v. Napster, Inc., 114 F. Supp. 2d 896, 921 (N.D. Cal. 2000), rev'd in part on other grounds at 239 F.3d 1004 (9th Cir. 2001).  Meanwhile, the test for right and ability to control is highly fact-specific, and courts have

used a variety of factors to evaluate that prong.  See, e.g., Polygram Int'l. Publ'g, Inc. v. Nevada/TIG, Inc., 855 F. Supp. 1314, 1328 (D. Mass.1994) (discussing factors used by courts in evaluating right and ability to control).  A common theme running through the cases discussing right and ability to control is whether the defendant showed a high level of actual involvement in corporate operations that led to the infringement.  See, e.g., Polygram, 855 F. Supp. at 1328; and Burdick v. Koerner, 988 F. Supp. 1206, 1210 (E.D. Wis. 1998).  Making such a showing requires plaintiffs to go beyond proving that a defendant had an official position in an infringing corporation.  See, e.g., Burdick, 988 F. Supp. at 1210 ("[T]he better-reasoned case law demonstrates that in order to establish vicarious liability in the context of a claim for copyright infringement, a plaintiff must introduce evidence beyond a defendant's membership on a board of directors.")

With this in mind, there is little question that Mr. McKinley and Ms McCartin meet the benefit prong of the test.  Both stood to gain financially from the copyright infringement in this case.  The music selection at a night club has an impact on its success, and Defendants hoped to share in any profit made by Once and For All's operation of Club Vortex.  The only question, then, becomes whether Defendants meet the legal test for the right and ability to control the infringing activities.

From the record, it is clear that there was a distinct division of labor among the individuals who owned Once and For All and operated Club Vortex.  Mr. McKinley had full responsibility for all of the club's bar operations.  Ms. McCartin handled most aspects of the club's finances.  And Grant Mitchell apparently had responsibility for the entertainment aspects of the club, including generally selecting the music played at the club, hiring the DJs and supervising them while they performed at the club.  In light of this structure, Plaintiffs attempt to

rely on something less than direct control of the infringing activities to show that Defendants should be vicariously liable. As explained below, the evidence on the record does not support the Plaintiffs' argument.

### A. Mr. McKinley

By his own admission, Mr. McKinley could and did control the music that played in the bar area of Club Vortex. But he categorically denied having any involvement in hiring or supervising the DJs who performed at the club. Plaintiffs have not produced any evidence to contradict Mr. McKinley's testimony, and the ASCAP investigator's report establishes that the infringing songs were played by DJs. Accordingly, the court finds that Mr. McKinley has proven that he did not have the right and ability to control the infringing activities at issue here. Compare Playboy Enters., Inc. v. Webbworld, Inc., 991 F. Supp. 543, 554 (N.D. Tex. 1997) (holding that a defendant who admitted to a degree of control over infringer's general business was not vicariously liable for infringement because he did not control the infringing activities in particular).

### B. Ms. McCartin

From the record, it is clear that Ms. McCartin had nothing to do with any of the infringing activities at issue here. Ms. McCartin established that her work for Once and For All and Club Vortex was entirely limited to a behind-the-scenes role managing the club's finances. She aptly compares her situation to that in Van Halen Music v. Palmer, 626 F. Supp. 1163, 1167 (W.D. Ark. 1986), where a corporate secretary was not held vicariously liable for copyright infringement mainly because her duties at the corporation's night club were "entirely administrative."

In contrast, Plaintiffs have adduced no evidence that Ms. McCartin had any right or

ability to control the music that the DJs played at Club Vortex. Plaintiffs make much of Ms. McCartin's large share of Once and For All and her service as the corporation's only officer. But these facts alone are insufficient to prove the right and ability to control in the face of Ms. McCartin's undisputed denial of any actual responsibility for the music played at the club. See, e.g., Playboy, 991 F. Supp. at 554 (defendant who provided start up capital and provided services to corporation not vicariously liable for infringement because there was no evidence he controlled the infringing activities); and Burdick, 988 F. Supp. at 1210-12 (finding several corporate officers and shareholders were not vicariously liable because they had no right or ability to control infringement).

## ORDER

For the foregoing reasons, the court orders as follows:

Mr. McKinley and Ms. McCartin's motion for summary judgment (Dkt. No. 38) is GRANTED; and

Plaintiffs' cross motion for summary judgment (Dkt. No. 106) is DENIED.

SO ORDERED this 6th day of June, 2008.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
Chief District Judge